[J-25-2015][M.O. – Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| TIMOTHY L. WATTS, | : | No. 112 MAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 935 CD |
| v. | : | 2013 dated 1/7/14, reconsideration |
| | : | denied 2/26/14, affirming the order of |
| MANHEIM TOWNSHIP SCHOOL | : | the Lancaster County Court of Common |
| DISTRICT, | : | Pleas, Civil Division, at No. CI-12-17815 |
| | : | dated 5/24/13 |
| | : | |
| Appellant | : | ARGUED: April 7, 2015 |

**CONCURRING OPINION**

**MR. CHIEF JUSTICE SAYLOR**                **DECIDED: August 26, 2015**

I agree with the result reached by the majority and write to explain why I believe such result should be limited to the circumstances presented.

The common pleas court made particularized findings and conclusions, and it ultimately stated that its holding was

> limited to the specific factual circumstances before the [c]ourt: a situation wherein both parents live in the school district, the student is subject to an equally split joint legal and physical custody agreement, and a bus from the student's school has available seats, already serves both homes and could accommodate the student without any further cost or adding an extra stop.

*Watts v. Manheim Twp. Sch. Dist.*, No. CI-12-17815, Findings of Fact, Conclusions of Law, and Order, *slip op.* at 9 (C.P. Lancaster May 8, 2013); *see* Majority Opinion, *slip op.* at 4 (summarizing these circumstances). The intermediate court, however, used the

appeal as an opportunity to convert the decision into a broader ruling of law to the effect that, whenever "a child has two residences within a school district, the school district must provide transportation services accommodating both residences." *Watts v. Manheim Twp. Sch. Dist.*, 84 A.3d 378, 386 (Pa. Cmwlth. 2014). The majority affirms that ruling.[1]

Left to my own devices, I would hew more closely to the limitations as expressed by the county court, including, most notably, the present availability of a bus to and from Father's home with an open seat that could be used by the student involved. *See generally Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 417, 984 A.2d 478, 490 (2009) (observing that judicial decisions are to be read against their facts to promote incremental development of the law "within the confines of the circumstances of cases as they come before the Court"). I find the existence of this circumstance material to the outcome because it means that accommodating C.W.'s living arrangements would not substantially add to the school district's financial or administrative burden in providing free transportation to its students. Thus, the county court's decision to provide relief, and the specific relief ordered, are closely tailored to the dispute's underlying facts as they were developed of record. It is not evident to me that the same relief would be required in a different situation, such as where the school district was able to demonstrate that providing transportation to both residences would require the expenditure of funds far in excess of the private cost of transporting the student to school or the appropriate bus stop.

---

[1] The majority and the intermediate court both rest the two-residences predicate on the equal division of time between parents. *See* Majority Opinion, *slip op.* at 22 ("C.W. has two residences by virtue of his parents' equally shared physical custody[.]"); *Watts*, 84 A.3d at 386 ("Because C.W.'s parents share joint and equal custody by court order, C.W. has two residences within the district." (citation to record omitted)).

As for my broader concerns, I would observe that when students maintain two addresses in a school district, accommodating their living arrangements is likely to entail administrative costs above and beyond those associated with students who maintain a single address. Since the School Code does not speak directly to this situation, the question becomes whether the Legislature would have intended for this extra cost to be borne by the school district or the family. I find the question difficult to answer as it pertains to the Legislature which drafted the Code in 1949. That body did not evidently consider the possibility of multiple homes within a single school district, as evidenced by the Code's failure to provide guidance relative to such circumstances.

In terms of the Code's overall purposes, on one hand it does appear aimed at promoting school attendance, as the majority emphasizes; on the other hand, it gives school districts significant leeway in implementing such attendance. For example, the Code does not affirmatively require busing. Hence, a significant increase in the cost of busing might lead some school districts to discontinue the service, or, alternatively, to curtail educational programs or raise taxes. Accounting for such tradeoffs falls within the domain of the school district in the first instance, and it lies within the legislative sphere to balance the broader policy considerations associated with affording school districts discretion in this area. As such, absent further legislative guidance, I share the dissent's concern with having the judicial branch make broadly-worded rulings that are likely to bind school districts on a widespread basis across Pennsylvania.